May it please the Court, my name is Claudia Kloss. I represent Elsie Stein, the appellant. Ms. Stein could not be here today, but with me are her niece and nephew, Beverly and Bob Stilson. And at issue in this appeal are three phrases... Excuse me, could you raise your voices a little bit? At issue in this appeal are three phrases used in Section 363J of the Bankruptcy Code. That is cost of sale, compensation of the trustee, and shall distribute according to the co-owner's interest. As to cost of sale, the BAP applied the wrong standard by holding that cost of sale includes not only the cost of sale paid through escrow after the sale, but also attorney's fees incurred by the trustee in preserving and disposing of the property. Under the... Counsel, could the trustee here have employed outside counsel? Could the trustee have engaged some other attorney to handle the sale? He... He didn't, but could he have? Under Section 327, the trustee can apply to the court to employ counsel to help him with his trustee's duties, and he has to... Okay, well, not as his trustee's duties, just to help facilitate this sale. It's not unusual to have an attorney involved. In fact, in some states, in order to sell property, it is required that an attorney handle the sale. In some states, it is required that the real estate attorney be present at the closing. That is not required in California, and the trustee in this case did not hire an attorney to help him with the closing. Instead, the escrow company handled that task. And the attorneys involved in this case were only involved to help the trustee with his duties as trustees, which is to liquidate the debtor's property for the benefit of the estate and maximize the benefit to the estate out of the estate property. So if the trustee had retained counsel in this case because of whatever concerns the trustee had about the complicated nature of the particular parties involved and wanted to make sure that the sale went forward in an orderly fashion, is it your position that those would be expenses of the trustee or that those would be perhaps not compensation of the trustee? Those would be a compensation of the trustee because the attorneys that the trustee hires take the side of the trustee. They are not there to represent the co-owner or to help to do what the co-owner wants or help the co-owner, but to help the trustee. For example, the trustee's attorneys reviewed the exemptions filed by the debtor to see whether the yield of the sale to the estate would be big enough to justify the effort. So the trustee might have decided based on that not to sell the property, even though Ms. Stein might have wanted to sell the property sooner rather than later, or the trustee negotiated a stipulation with Ms. Stein that would benefit the estate, and he took the side of the estate and not the side of Ms. Stein. And the trustee compensation includes compensation not only for trustee's duties that the trustee fulfills personally, but also a trustee's duties he fulfills through the use of the attorney. Now, to the extent that in New York or in other states real estate attorneys are required to be present at the closing, they represent both the co-owner and the estate for that particular transaction. So that setting would be different than the trustee's attorneys helping the trustees fulfill his trustee's duties, because in that context those attorneys do not represent the co-owners and are not allowed to represent the co-owners. And, in fact, in order to employ those attorneys, the trustee has to prove to the court that the attorneys do not have an interest adverse to the estate, and the co-owner's interest would be adverse to the estate. What do you say to the VAP's concern that, in this case, if the trustee hadn't intervened to prevent the foreclosure, your client would have lost all of his interest in any event. So why shouldn't he pay for at least that part, which is of direct benefit to him? It is not a direct benefit to Stein, even if it was good for her, because the trustee wouldn't have done it if it hadn't been good for the estate. And then it is not true that Stein would have lost the property, because the partition file was set for about a week after the filing of the bankruptcy, and the state court would have appointed a referee to sell the property, and there's no reason to believe that the referee at the state court would have done any worse in selling the property than the trustee. In those circumstances, would Ms. Stein have had to pay for any legal counsel or any fees? The only costs she would have necessarily incurred are the costs of sale that are paid out of the escrow company. Anything else would not necessarily have happened. For example, on the eve of the partition trial, the case might have settled. The parties might have said, okay, let's just hire brokers, split the proceeds 50-50, and be done with it. In that case, she would not have incurred any costs of sale other than whatever the escrow company pays as costs of sale. Had the partition trial gone forward, then a neutral referee would have handled the proceedings and would have listened to her concerns, and she would have had some influence on the proceedings and on the process of sale, but she had no influence on what the trustee did. Now, the mortgage went into default when? I believe the trustee or the foreclosure, the lien holder applied for relief from stay in October. But when did the default occur? The first, based on the default, the first possible sale date was May 29 of 2001. So it was in default, I take it, for nonpayment. And then sometime after it was in default for nonpayment, there was the petition in bankruptcy. It was not the petition in bankruptcy that petitioned the default, am I right? The petition in bankruptcy came a week before the partition trial. But you understand, I'm assuming that the mortgage would be in default if one of the debtors went bankrupt. But it was in default for nonpayment long before that, am I right? Probably not long before that, but maybe a couple of months before that, such that I guess once no one pays on the property, there are certain deadlines. And throughout, of course, the partition proceeding, these parties were adverse to each other on a lot of issues in that case, were they not? And then there was money spent or time spent by bankruptcy counsel to seek a stay of the foreclosure. Correct. And that was what, unsuccessful? That was unsuccessful, correct. And then what happened? The property was then sold during the pendency of that foreclosure proceeding, right? Correct. Now, whatever happened to the partition action? The partition action was automatically stayed when the debtor filed for bankruptcy, and it was never revived. And what is the status of that now? It is dismissed. It's dismissed? Yes. And where are these various claims between the parties that exist on, oh, what is it, violation of trust or whatever the claim is? The breach of fiduciary duty claim was dismissed before the debtor ever filed for bankruptcy. It was dismissed on demur and it was dismissed with prejudice. So there's nothing pending? No. Nothing? No. No claim in bankruptcy or any other place on that? No. Okay. What's happened to the distribution? The BAP said that justified the immediate distribution being held up pending these claims. So has the money that was at issue been distributed? No. No money has been distributed. And Stein has filed a complaint for declaratory relief to get a declaration that none of the claims that the trustee says he may assert in the future and that he can assert that none of these claims have any merit. And that complaint was dismissed for lack of jurisdiction. You mean the Declaratory Judgment Act? Yes. All right. Counsel, you've got, there are two charges here that the BAP affirmed. One for $3,430, which is for defending the property in the state proceedings. Can you explain what that charge is for? This is for defending the property in the state proceedings which were filed by your client? Those are the proceedings filed by the lien holder to get permission to proceed with the foreclosure and record the appropriate notices even though a bankruptcy was going on, which then would. . . Okay. So this is for state proceedings filed by yet a third party? Right. Okay. On the $20,368.50, can you break that down? Are there some portion of that that you do not dispute or do you dispute every penny of that? I dispute every penny of that because all the work the trustee did was for the benefit of the estate and he did because he did all of those items because it was his duty as trustee to get the most money for the estate and that is what he did. So any benefit that there was for Stein was, if there was any, it was incidental and incidental benefit does not matter. Can you explain to me what's adversarial about the trustee attempting to gain maximum value for the value of the property? Doesn't that work to the benefit of your client as well? I understand she doesn't want to sell this property. She's very unhappy about that. She would have rather proceeded in a different way. But given that she's going to be stuck with the bankruptcy proceedings, what then is contrary to her interest in the way that the trustee conducts it? It's contrary to her interest that the trustee negotiates with her a stipulation where she makes concessions regarding the partition trial or regarding the sale of the property and regarding how much money she will get out of the proceeds. And it is contrary to her interest that she should pay and is, in fact, absurd that she should pay for the opposing attorney to negotiate with her attorney. Of course, other items that are in the list that are clearly against her interest are, for example, Stein sent an offer to buy the trustee's estate share. The trustee's attorneys reviewed her offer and rejected it. And Stein is supposed to pay for the attorney's fees incurred in doing so. She's supposed to pay for attorney's fees incurred in reviewing stipulations that she proposed. And if the trustee's attorneys were to act for her benefit, obviously they would just sign whatever stipulation she proposes because that is the stipulation that she wants. And it is not in her interest when the trustee reviews the exemptions claimed by the debtor to see what is the yield to the estate in order to then maybe not go ahead with the sale or decide on a sale based on these things that don't really concern her. Well, they may not really concern her, but they did go to the question of how much money you could get for the property. And that does work to her benefit. How much money the estate would get for the property because the debtor can have an exemption of either $50,000 under the California Homestead or $3,000 under the wild card exemption. Either way, it comes out of the estate's share, and that impacts how much the estate gets. And you're saying that you were charged that that $20,000 includes trustee time spent on that question, which does not have any impact on Ms. Steinshare? Correct. Why don't we let your opponent, friendly adversary, speak, and we'll give you a couple of minutes for rebuttal. Thank you, Your Honors. It's an honor to be before this Court. You'll need to state your name. Sorry, Stephen Schwartz, Standing Gill, Diamond & Kollitz. I'm here on behalf of the trustee, Richard K. Diamond. Your Honors, I'd like to address a few points that were addressed by this Court and by the appellant. With respect to the key issue here is that the appellant at the bankruptcy court level had challenged the entirety of the fees that were sought by counsel. It was based on a categorical denial of those fees, just on the basis that no attorney's fees should be allowed in the 363-J cell. Well, if they're all part of the trustee's compensation, wouldn't that be a correct position to take? If they're all part of the trustee's compensation. Isn't that the basis of Ms. Stein's argument that there's no authority to charge the co-owner anything that is part of the trustee's compensation?  Yes, Your Honor. My point being that the appellants did not specify which fees and costs should be attributable and which ones shouldn't. She was basing on a categorical denial of the standard that was applied by the bankruptcy court and affirmed by the BAP, which is cited in Ray Phil, which is the direct benefit necessary. If we don't buy in Ray Phil, then what's the relevance of benefit? The question isn't on whether there's any benefit to the co-owner. The issue is whether it comes within the costs and expenses, not including compensation of the trustees. Yes, Your Honor. What is it that you contend would be, even under if we read that bankruptcy code literally, what is it that should be counted not as part of compensation of the trustee? Well, Your Honor, the 363J specifically says compensation of the trustee. Congress is able to decipher the difference between a trustee and counsel. Counsel's administrative expenses, legislative history, refers to costs of administration. As the BAP points out. Well, if the trustee hires counsel to perform the trustee's duties, as in fact the BAP seemed to suggest that some of these expenses were, in fact, obligations of the trustee and then relied on the failure, apparently, that you're making, point of failure of Ms. Stein to specifically object to that. But if, in fact, the trustee is simply hiring counsel to do what the trustee is obligated to do for the benefit of the estate, how is it that the 363J allows charging the co-owner with that? This is not a secured creditor. Well, that's correct, Your Honor. That's making this claim. So we're not under 506. We're under 363J. That's right. We are not under 506. And that's an important distinction. In 363J, you're dealing with costs that would be directly related to the sale of the property. This is staving off foreclosure. This is negotiating with the secured lender regarding the payments of late charges or other costs. This is the dealing with wild deeds that occur, you know, a week before the sale. Are these all obligations of the trustee to take those actions? Well, Your Honor, these are obligations of the trustee. These are also items that benefit both the trustee and the co-owner. There's no benefit clause in 363J. That's what I'm trying to understand. How do you decide what is or isn't compensation of the trustee? It doesn't have anything to do whether it's a benefit to the co-owner. It has to be analyzed, does it not, as to whether or not it falls within compensation of the trustee. Well, I think that you take compensation of the trustee literally. The trustee takes a statutory fee for his compensation. The trustee is not getting directly compensated by the efforts of the attorney. Yes, the attorney is doing the work that is assisting the trustee in administering the estate, but the term compensation, the trustee is not getting compensated by the efforts of the trustee's counsel. If Congress meant the trustee and his counsel, the Congress would have said so. Now, in this, what happened here in the bankruptcy court and the resolution by which this property was sold and the proceeds were to be divided is the same thing that would have happened, absent the bankruptcy, in the partition proceeding, is it not? Yes, Your Honor, it is. And so when this co-owner was going along defending the action that your client brought to petition in the state court, she was ready for trial within a week, right? I believe that's the petition. And then your client files bankruptcy. Your Honor, that's not my client. My client is the trustee. All right. All right. Excuse me. Anyway, the co-owner filed bankruptcy. Correct. And that brings this co-owner into bankruptcy court to litigate the issues that were ready for litigation before the foreclosure was ever filed, right?  And then whatever the trustee hired lawyers to do by way of fending off the foreclosure proceeding would have been done by a prudent trustee to defend the interest of the estate, would it not? Yes, Your Honor, I accept. And any benefit to a co-owner is purely incidental, is it not? No, Your Honor. No? The benefit is not incidental. Your Honor, this is a situation where the co-owner had consented to the administration of the property in a partition suit. It's very likely that upon that sort of consent, a consensual attorney would be employed by the estate. Okay. And that attorney would then charge the co-owned portion of the proceeds. It would have been an attorney-client relationship. And it would have been somebody approved by the court, would it not? Correct, yes. And would have been acting on behalf of both. Correct. With zero conflict of interest. And in this instance, the attorney hired by the trustee is under the direction of that trustee and nobody else. That's correct, Your Honor. And that attorney on behalf of the trustee is negotiating with his co-owner on behalf of the trust and nobody else. I mean, on behalf of the estate and nobody else, right? Negotiating with the co-owner. Yes. I mean, if by negotiating you mean stipulating to a consensual sale. Well, whatever negotiation is. Okay. Yes. And the court, the bankruptcy court, as a matter of fact, allowed all of the expenses of the attorney against the bankruptcy estate, did it not? It allowed it as necessary on behalf of the estate. Yes, Your Honor. Now, then all that was ever accomplished here, as I get the picture, and you correct me if I'm wrong, is that this attorney on behalf of the trust created a fund, half of which goes to the estate, and the other half of which he sought to and succeeded in tying up to pay some future claim. True. To pay some future claim. Well, where is the co-owner's half? The co-owner's half is segregated. And tied up. That's my word. Is that wrong? Is it tied up? Well. It is tied up as a result of numerous appeals. It is tied up as a result of a claim. A claim. By the co-owner in the bankruptcy estate for ouster and for the same issues that were on the state court level pending a resolution of those issues. But it's held to protect the trust in case it wins on all of those issues. True? That's correct, Your Honor. Now, you say all this benefits the co-owner. What benefit has the co-owner gotten so far? Well, Your Honor, we would not be here today fighting over, you know, over proceeds which exist for the benefit of both parties had we. . . Well, why do you keep insisting it's for the benefit of both parties? But in one perspective. . . $120,000, $60,000 of which is claimed by Ms. Stein and $60,000 of which is claimed by the trustee. And this money simply would not exist had Trustee's Counsel not gone through the efforts of dealing with the secured lender, of staving off the foreclosure, of dealing with the wild deeds that were filed. Without any of those efforts, Your Honor, there would not be any money for us to be talking about today. All of that is true, except that the attorney for the trustee so far has succeeded in seeing to it that none of that money is paid to the co-owner and it is available to the estate in the event that the estate prevails on some of these ill-defined claims against the co-owner. Am I right? Your Honor, the only way that the trustee would impart on an action against the co-owner's share of the proceeds, other than the issues before this Court, would be if the trustee found there was a bona fide reason to do so and if there was funds in the estate to work with. At this point in this proceeding, we have been through numerous appeals. We've been through so much litigation, just with respect to this issue, Your Honors, that the estate is near administrative. That has a little flavor of bootstrapping. We are in a situation where we are nearly administratively insolvent. Well, that may be, but the co-owner has a right to litigate whether you have the right to withhold these fees. So to say that because of all of these appeals on this issue, that doesn't carry a lot of weight. Your Honor, you have this case, this Morocco case, where they talk about, you know, the constitutional reasons why you should give up the estate share, the co-owner's share of the proceeds on an immediate nature. That case, the claims were readily identifiable. In our case, they're not readily identifiable at this point. I'm not sure what the point of that is. The point is that we are here today. We still have to figure out how much money is supposed to go to the co-owner. Well, if the rule were clear, you're litigating over an issue that is the bankruptcy judge went one way, the BAP went another way, and we're here to resolve that. So it's not exactly if there were a bright-line rule. If there were a bright-line rule, you wouldn't have had to spend any money deciding whether or not. That's true. These fees should have been charged or not, whether it had to be a benefit or non-benefit. Well, the point being that these are not the issues that are before the court on appeal in terms of the, you know, how much of the underlying partition claims by both parties. The issue here on appeal is the issue of whether the attorney's fees should be able to be charged against the cost of sale. That's why I was wondering why you were invoking this appeal as having anything to do with the estate being drained. Well, I'm merely pointing into the comments of the court, which is, you know, tying into, you know, why is the trustee holding these proceeds? Well, that wasn't the reason that the BAP gave for justifying withholding. They said that there were these other issues not related to the legal issue that the BAP was called upon and were called upon to decide. So I'm still unclear. What are the issues? Counsel has said there are no other pending actions. So when are these issues supposed to be resolved, and what are they that are holding up, tying up the money? The issues tying up the money are the issues of contribution claims. And the claims – I'm sorry? You mean this appeal? Well, this appeal is one. But there's also issues of contribution. There were pre-petition and post-petition contribution claims. Where are those being resolved? They will be resolved through the claims process. So the trustee will decide? Well, Your Honor, the trustee – again, the trustee will – there are claims objections. Excuse me. There were claims, proof of claims that were filed by Ms. Stein in the bankruptcy case for claims of ouster and for claims of contribution. Now, Your Honor, the trustee, if it is to object to those claims, may assert his own counterclaims. So this can't go on forever, isn't it? Well, it can go on forever, Your Honor. But the trustee has no – it doesn't intend for it to go on forever. Trustee would like nothing better than to be able to, you know, to administer the estate's portion of the proceeds and to get Ms. Stein her share of the proceeds. That's been the trustee's intention from the beginning. However, we're sort of stuck in a slippery slope going up the chain, waiting for the opportunity to be able to make that distribution. Okay. Counsel, did anybody try mediation in this case? Yes, we did try mediation. And the underlying issue is this – is the attorney's fees that are before this court, which unfortunately we've been unsuccessful in resolving. Is the – how broken down is the $20,000 figure? I mean, is it broken down by hour by hour? I mean, how much of an accounting is there on that figure? I understand that counsel seems to have taken – opposing counsel seems to have taken this all or nothing approach. Correct. Is that your view, that that's the only way this can be resolved? It's either an all or nothing, or is there any way of breaking that down? No, Your Honor. In fact, the bankruptcy court did just that. I mean, we went in and asked for the co-own share to be charged with a number of attorney's fees that we thought were deemed necessary and of benefit to the co-owner. And, you know, the opposing counsel had come in and said, no, they shouldn't be charged at all. And the court, sua sponte, ruled that only a portion of those fees should be chargeable to the estate. Let me just give you – let me just give you, for instance – and I'm just going to make some things up here. Let's suppose that we were to rule that costs associated with – directly associated with the sale of the property, that is, with the closing, would be appropriately charged to both parties. But that, as the opposing counsel said, that the time spent negotiating with her attorney over stipulations would not be appropriately chargeable. Can those figures be broken down? Can those be broken out of this $20,000? Yes, Your Honor. There's enough detail here. They could be, because these are based on specific time entries that were done in, you know, tenths of an hour figures. These are the same issues with respect to the interim fee application. Yes, they could be. And, in fact, it's of our being that they were at the bankruptcy court level. In order for this court to go through each of the costs that were applied to the co-owner's share and to find that the bankruptcy court had earned in that respect. I don't think that was the thrust of Judge Bybee's question. I don't think this court plans to go through the detail like that. Well, in order to do so, that would be subject to a clearly erroneous standard. You'd have to show that the bankruptcy court had made a clear error in its judgment of which fees should be chargeable to the co-owner's share. Well, there are errors of fact and errors of law. And it seems to me that most of what we've been arguing about has been law. I guess what I've been trying to figure out is whether there are facts sufficient if we were to find the law differently from the way that the bankruptcy court did, whether there's enough detail there to justify an additional inquiry. Well, Your Honor, there's sufficient time detail in our time entries to be able to, you know, determine which ones were of a necessary and direct benefit to the co-owner. The issue becomes, you know, it's simply a matter of either this court says that 363J, you know, allows for attorney's fees or it doesn't. Now, 363J doesn't say anything about attorney's fees. It says compensation of the trustee. Compensation of the trustee is not attorney's fees. If this court is to allow that attorney's fees are included under 363J, then it becomes a question of whether or not the bankruptcy court made a clear error. Well, just on that point, to make it precise as to what the BAP said, in litigious context of this case, we cannot say that the court's findings of direct benefits were clearly erroneous. We so conclude, even though some of the services, e.g., discussions with a broker regarding valuation and marketing of the Downey property, appear to be services reflecting trustee duties that ordinarily ought to be performed by any qualified trustee without assistance of counsel and thus would ordinarily be disqualified from payment under 363J. Now, are you in disagreement with that conclusion or that observation of the BAP? Well, yes, Your Honor, I am. Okay, so you have a dispute. Is it your position that attorney fees, by definition, are not compensation of the trustee? Is that your position? So as long as it shows up in attorney fees, then it's fair game to charge to the co-owner, even if the BAP might, in its own mind, have concluded that the trustee should have been able to do that without hiring counsel? Well, Your Honor, there's also a footnote to that opinion. What's your position? My position is that the costs of administration, the compensation of the trustee, and the compensation of the trustee's attorneys are two separate items. Okay, so the answer to my question is as long as your law firm, representing Mr. Diamond as trustee, puts it in as legal attorney fees, then it's not part of his statutory fee. Is that it? Well, that's correct, Your Honor. And therefore, it doesn't come within 363J as compensation of the trustee. Your Honor, the fact that the trustee's firm represents the trustee.  I understand that's usual. I'm just trying to understand how you're allocating here. The BAP said any competent trustee should have been able to do this particular act, which, in fact, got charged as legal fees. So if you take the BAP at its word, it probably would have said this is not permissible. You can't get around 363J by labeling something as attorney fees when, in reality, it is something that is part of the duties of the trustee for which the trustee is getting statutory compensation. Correct? Well, Your Honor, I understand that this Court has, in other instances, taken the position that when the trustee's counsel does work that typically a trustee should do, then the trustee's counsel should, in certain instances, not be compensated for that work. All right. And that, you know, I do understand that issue. And had the Bankruptcy Court ---- It's not the issue. I'm just trying to get your position. I'm not trying to decide whether in this particular instance the BAP is right or wrong. I'm trying to understand if the trustee's position is that even if the trustee engages in something which a bankruptcy judge or judges in the case of the BAP might otherwise conclude would be part of the duties of the trustee, if it shows up as attorney fees, that's the end of the inquiry. That's not your position, is it? Or is it? Well, Your Honor, I would say that it's a matter of the ---- Yes or no. If it's attorney fees, you started out by saying compensation of the trustee does not include attorney fees. That's correct. Okay. Now there is a series of events that took place with respect to this, the sale of this property. Some of it was part of Mr. Diamond's statutory compensation as trustee. Some of it shows up as attorney fees, whether it was Dan and Gil or it was an outside firm that Mr. Diamond retained. I'm not impugning his abilities or his ethics or anything. I'm just trying to understand, is the label, the category in which these costs and expenses are rendered to the estate determinative? Your Honor, the ---- Yes or no. Then explain your answer. Well, the answer would be ---- You can't explain it. Well, I would say that the 363-J does not ---- talks about compensation of the trustee, does not talk about trustees' professionals. In light of what the court is saying is that if there are certain actions of the trustees' counsel that should or narrowly be done by the trustee, that becomes an issue of compensation of trustees' counsel. Now, if the court finds that the ---- It doesn't become. The issue before us, counsel, with all respect, is how much of these fees, assuming some attorney fees may be, assuming for argument, some attorney fees may be fit within costs and expenses, how much of that can be transferred pro rata to the co-owner? Now, it may be a dispute between the trustee and counsel whether the bankruptcy court is going to allow the amount of fees that were incurred for the expense. And the bankruptcy court may say, we don't think, I don't think as a bankruptcy court that the fees were either reasonable or necessary or they should have been performed by the trustee. Correct. But the mere fact that they show up as attorney fees doesn't mean that they can automatically be shifted on to the co-owner. Is that correct? Well, Your Honor, I do not agree. I believe that the fact that the ---- Are you trying to say that if the bankruptcy court, in assessing the costs and expenses of sale, concludes that some of the attorney fees should have, as in the case of the victim of the BAP, should have been performed by the trustee as part of his trustee duties and disallows those as a claim by the trustee as costs and expenses, that is what the bankruptcy court can and indeed is empowered to do? Yes, Your Honor. Okay. And then whatever is left over of that claimed attorney fee as costs and expenses can then be pro rata imposed upon the co-owner? Correct. Okay. Thank you. All right. I think we have your point. Unless there are any other questions. Well, just one question. Of the funds held that would otherwise go to the co-owner, what will they ever be used for? Of the funds held? Well, they would either go to the co-owner or, to the extent that the trustee has a claim in them, would go toward the administration of the estate. So it would either go to pay the ---- Of which Ms. Stein also has a claim in the bankruptcy estate. Let me get it straight now. It's not going to be used to pay her claim. Or is it? If she wins on her claims against the estate, are you going to use this money to pay her? No, Your Honor. Or are you? Not the co-owner, sure. All right. So the fact that she has a claim against the estate has nothing to do with whatever the trustee might foresee using that fund for. Now, what is the trustee ever going to use that fund for? That fund is going to go to pay the co-owner's share. Well, why is it being held? It's being held pending a resolution of this appeal. What difference does it make if it's going to be used to pay her share? I'm sorry? Or is it going to be used to pay the trustee's claim if he succeeds against her? Either way, yes, Your Honor. Well, is it or not? Yes. I can't visualize why it's being held. It's being held pending a determination as to how much the co-owner should get. And how are we ever going to know how much she should get? We would go into bankruptcy court to determine that. And we would determine it on the basis of what kind of a framework? What claims? It would be claims for contribution, claims for... It would be the trustee's claims against her? It would be the debtor's claims that the trustee has, you know, that are property of the estate that the trustee would be able to administer. Does the trustee know what those claims are? Well, the trustee certainly has an idea as to what those are. What are they? They're a state court claim. What are they? They are claims of contribution for improvements for the reasonable rental value while Ms. Stein was occupying the premises. And those claims have never or are not pending against her any place now? Not at the moment, no, Your Honor. Well, not at the moment. They haven't been pending for how many years now? Well, that's correct, Your Honor, because we have been, you know, we are in this appeal. Okay, that's all I have. Very well. All right. Thank you. Thank you. You can have a brief rebuttal. I think we have the case pretty well in mind. The costs, the fees for filing a motion for sale and for discussing with a broker were incurred in Murray Ritchell and in Ray Nowitzki and in Ray Tiska and also in Ray Phil, and those tasks were done by an attorney, and the court did not allow those fees to be imposed on me. Okay. Thank you very much. Thank you, counsel. We appreciate the argument, just in case. We will stand in recess for the day, and we thank you all. All rise. The court is adjourned.
judges: Leavy, Fisher, Bybee